IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANITA R. SNEDKER,                )
                                 )
                                 )
        Plaintiff                )     Civil No.08-6173-AA
                                 )
    v.                           )     OPINION AND
                                 )     ORDER
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
        Defendant.               )

ALAN STUART GRAF
P.O. Box 92317
Summertown, TN 38483
        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

LEISA A. WOLF
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

AIKEN, District Judge:

Plaintiff Anita Snedker ("Snedker") seeks judicial review of the Social Security Commissioner's final decision denying her application for benefits under Titles II and XVI of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be REVERSED and REMANDED for the reasons below.

## BACKGROUND

Born in 1961 (Tr. 68), Snedker has a tenth-grade education. Tr. 79.[1] Between 1999 and 2001 Snedker reports work as a cook, waitress, and golf products salesperson. Tr. 75. Snedker applied for DIB and SSI on June 9, 2005, alleging disability since July 1, 2001. Tr. 68-70, 230-32. Snedker initially alleged disability due to back pain, a ruptured cervical disc, fibromyalgia, bursitis, and spina bifida. Tr. 74.

The Commissioner denied Snedker's applications initially and upon reconsideration. Tr. 33-42, 222-29 An Administrative Law Judge ("ALJ") held a hearing on October 10, 2007 (tr. 233-59), and subsequently found Snedker not disabled on November 6, 2007. Tr. 14-23. The Appeals Council denied review of that decision, making it the Commissioner's final decision. Tr. 5-7.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on November 25, 2008 (Docket #12).

2 - OPINION AND ORDER

she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(ii). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.909(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.930(e); Social Security Ruling ("SSR") 96-8p (*available at* 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.909(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v), 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. 20 C.F.R. §§ 404.1512(a); 416.912(a); *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

The ALJ found Snedker's cervical degenerative joint disease and associated chronic headaches severe at step two in the sequential proceedings. Tr. 16. The ALJ found that these impairments did not meet or equal an impairment "listed" in the Commissioner's regulations, and assessed Snedker's RFC:

> Ms. Snedker has the residual functional capacity to frequently lift less than 10 pounds and occasionally lift up to 10 pounds. She can sit, stand and/or walk for six hours each during an eight-hour workday. She should have a sit/stand option at will, and she should not reach overhead due to her cervical condition. Ms. Snedker is limited to one- to three-step tasks due to the effects of pain and fatigue on concentration.

Tr. 19. The ALJ found that Snedker is unable to perform her past relevant work at step four, but may perform work in the national economy at step five in the sequential proceedings. Tr. 22-23. The ALJ therefore found Snedker not disabled. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42

4 - OPINION AND ORDER

U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id., see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Snedker contends that the ALJ improperly assessed her credibility, erroneously rejected a physician's opinion, and inappropriately rejected a lay witness's testimony. Snedker asks the court to remand the matter for further proceedings.

### I. The ALJ's Credibility Finding

Snedker asserts that the ALJ's credibility analysis failed to consider that she could not afford treatment, made improper medical speculations, and relied upon a selective reading of the record.

#### A. Credibility Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.   Analysis

The ALJ found Snedker not fully credible. AR 20. The ALJ based this finding upon Snedker's inconsistent reports, noncompliance with treatment, symptom exaggeration, and work history.

#### a.   Snedker's Testimony

The ALJ first noted that Snedker made inconsistent statements regarding her ability to stand and walk, specifically that Snedker reported that she may stand and walk "0" hours each day. The ALJ subsequently inferred that Snedker's report "implies that she is fully bedridden" and that this is "clearly not the case." Tr. 20. Snedker now asserts that this finding constitutes a selective reading of the record.

The record shows that Snedker endorsed "0" in response to questions asking how long she can walk, stand, or sit before needing rest. Tr. 93. The ALJ's citation to Snedker's report is thus based upon the record; this court must determine whether the ALJ made a proper inference regarding

the effect of that report.

This court must affirm "inferences reasonably drawn" where more than one rational interpretation arises. *Batson*, 359 F.3d 1193. The Commissioner cites the ALJ's finding but fails to defend her reasoning. Def.'s Br., 8. The record shows that Snedker concurrently reported that she "sometimes can't get out of bed." Tr. 92. The record does not further demonstrate whether, and to what extent, Snedker may or may not be bedridden. Snedker's report that she is bedridden at times is internally consistent. Based upon these facts, this court cannot affirm the ALJ's inference that Snedker misrepresented her activity level.

### b.     Snedker's Compliance With Treatment

The ALJ found that Snedker's "compliance with medication has been questionable." Tr. 20. Snedker now asserts that she could not afford medication, and ceased Remeron treatment because the medication was marginally effective. Pl.'s Opening Br. 15-16.

A claimant must follow prescribed treatment in order to obtain benefits. 20 C.F.R. §§ 404.1530(a); 416.930(a). However, the ALJ may not fault a claimant for failing to seek treatment she cannot afford. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The Commissioner now asserts that impairments controlled by medication may not be found disabling. Def.'s Br. 8 (citing *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006)). The *Warre* court endorsed this reasoning, but also specifically noted that "benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford." *Warre*, 439 F.3d at 1006. The Commissioner's citation therefore fails to address Snedker's argument that she ceased taking medication because she could not afford it and it was not effective. The ALJ's reasoning on this

7 - OPINION AND ORDER

point is not sustained.

Snedker additionally submits that she did not visit the emergency room because she could not afford to pay for emergency treatment. Pl.'s Opening Br. 15. Here the court notes the ALJ's comment that Snedker should have known that emergency rooms provide care "even to people who lack insurance." Tr. 17. This conclusion does not discredit Snedker's testimony that she lacked funds to go to the emergency room. This court specifically rejects the ALJ's reasoning regarding access to emergency room treatment.

### c. Snedker's Symptom Exaggeration

The ALJ also found that Snedker's symptom reports were "vague" and "extravagant." Tr. 21. The ALJ specifically noted that Snedker complained of vomiting following any muscle use, including vacuuming. *Id.* The ALJ also noted rheumatologist Dr. Ladd's skepticism regarding Snedker's report of her symptoms. *Id.*

#### i. Snedker's Symptom Testimony

Snedker testified that she vomits after using a vacuum cleaner because it "uses my muscles." Tr. 253. She also testified that she experienced nausea and vomited after taking Rameron and other headache medications (Tr. 243, 249), and vomits every time she has a headache. Tr. 247, 249. Snedker reporting having such headaches one to two times per week. Tr. 249. The ALJ noted these reports and stated that, "despite this alleged pernicious level of vomiting, the claimant sought emergency room care for headaches and vomiting only once in the last year." Tr. 17. The ALJ also noted that Snedker denied dehydration due to vomiting, and reported a stable body weight. Tr. 17-18. The ALJ subsequently concluded that the level of vomiting reported by Snedker would have led

to an electrolyte imbalance, and finally concluded that "there is no empirical basis for accepting Ms. Snedker's testimony as to the overall severity or frequency of her alleged vomiting episodes." Tr. 18.

An ALJ may not make medical diagnoses. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)(hearing examiner, not qualified as a medical expert, should not go beyond the record to make his own assessment of the claimant's condition). The ALJ's conclusions regarding the effects of Snedker's reported vomiting reach beyond the ALJ's role as adjudicator. This reasoning is not sustained.

### ii. Snedker's Reports to Physicians

The ALJ also noted rheumatologist Dr. Ladd's "scepticism" regarding Snedker's reported history. Tr. 21. Dr. Ladd evaluated Snedker on April 12, 2006. Tr. 195-96. Dr. Ladd first noted that "the history from this lady is vague and a little hard to come by." *Id.* Dr. Ladd concluded that he thought Snedker had palindromic arthritis, but, "on the other hand, I have [sic] little problems getting what I feel is a really accurate history." Tr. 196.

The ALJ infers that these comments impugn Snedker's credibility. Tr. 21. As noted, the reviewing court must affirm an ALJ's "inferences reasonably drawn" from the record. *Batson*, 359 F.3d at 1193. The record supports the ALJ citation. However, Dr. Ladd's comment that Snedker was "vague" and that her history was "a little hard to come by" do not on their own establish that Dr. Ladd disbelieved Snedker's reports to him. The ALJ's reasoning therefore does not meet the "reasonable inference" standard. This reasoning is not sustained.

///

### d. Snedker's Work History

Finally, the ALJ discussed Snedker's work history. Tr. 21. The ALJ first noted that Snedker testified she worked as a cook or waitress, and that the associated lifting was too much for her. *Id.* The ALJ noted that Snedker reported that she had never sought less strenuous work, and concluded:

> [H]er lack of effort in pursuing employment more suitable to her limitations coupled with her tenuous attachment to the workforce at any point (only two years of substantial gainful activity level employment in her entire working life) raise serious questions about her motivation to be employed at all, even aside from health considerations.

*Id.*

The ALJ may consider a claimant's poor work history in finding a claimant not credible. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ's reasoning on this point is therefore affirmed.

In conclusion, the court finds the ALJ's credibility finding unsupported by the record or substantial evidence. The reviewing court may affirm an ALJ's overall credibility finding where some aspects of it are not sustainable. *Batson*, 359 F.3d at 1197. However, Snedker's poor work history alone does not constitute substantial evidence justifying total rejection of Snedker's testimony. The ALJ's credibility finding is therefore not sustained.

## II. Treating Physician Dr. Weisensee's Opinion

Snedker asserts that the ALJ erroneously rejected treating physician Dr. Weisensee's opinion. Pl.'s Opening Br. 10-13. Snedker specifically claims the ALJ failed to accurately consider Dr. Weisensee's opinion that she allegedly could not work two days per month. *Id.* at 11.

///

10 - OPINION AND ORDER

### A.   Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* The ALJ may also reject a physician's opinion unsupported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B.   Dr. Weisensee's Opinion

The record before this court shows that Dr. Weisensee treated Snedker between June 2005 and May 2006. Tr. 171-72, 174, 176, 199-201, 203-04. During this time Dr. Weisensee assessed cervical disc disease with associated daily headaches, fibromyalgia, depression, and asymmetric pauciarticular arthritis ("very likely gout"). *Id.* On August 31, 2007, Dr. Weisensee wrote that he last saw Snedker one year previously, and that her diagnoses at that time were degenerative joint disease of the neck with chronic headaches, fibromyalgia, and depression. Tr. 214. Dr. Weisensee explained that these diagnoses were supported by imaging studies and clinical findings, and concluded that if Snedker was "treated medically, these [impairments] could lead to periodic requirements of days off from work. This could be [up] to two days a month depending upon circumstances. She could do light work or sedentary type work." *Id.* On October 3, 2007, Dr. Weisensee endorsed a statement submitted by Snedker's counsel indicating that Snedker would miss two work days per month due to her impairments. Tr. 219. The record shows that Dr. Weisensee was Snedker's primary treating physician throughout the period under review.

///

Case 6:08-cv-06173-AA   Document 20   Filed 07/07/09   Page 12 of 16

## C. Analysis

Snedker contends that the ALJ erroneously rejected Dr. Weisensee's clinical and work opinions.

### a. Dr. Weisensee's Clinical Opinion

The ALJ found Dr. Weisensee's fibromyalgia diagnosis unsupported by his clinical notes because Dr. Weisensee did not identify fibromyalgia trigger-point testing. Tr. 19. Snedker submits that Dr. Weisensee appropriately noted "multiple tenders spots in the arms, legs, chest, back consistent with fibromyalgia." Pl.'s Opening Br. 12. The record supports this submission. Tr. 172. Snedker also points to treating rheumatologist Dr. Ladd's notation that Snedker's clinical history "shows that she has had a diagnosis of fibromyalgia." Pl.'s Opening Br. 12. The record also supports this assertion. Tr. 195. The ALJ's finding that Dr. Weisensee's fibromyalgia diagnosis is unsupported is therefore not based upon the record.

The ALJ also discredited Dr. Weisensee's August 2007 letter because it was submitted one year after he last treated Snedker. Tr. 21. Dr. Weisensee noted this lapse in his letter, and restricted his remarks to the period during which he treated Snedker. Tr. 214. Dr. Weisensee's August 2007 opinion is thus supported by temporally concurrent clinical notes. The ALJ's finding that Dr. Weisensee's opinion was unsupported by appropriate clinical findings is not based upon the record. The ALJ therefore should have considered Dr. Weisensee's letter as it pertained to the period supported by his notes.

### b. Dr. Weisensee's Work Opinion

Dr. Weisensee's August 2007 letter also opined that Snedker would miss work "[up] to two

days a month depending upon circumstances." Tr. 214. On October 3, 2007, Dr. Weisensee endorsed a statement submitted by Snedker's counsel indicating that with treatment Snedker would miss work "two days per month on average." Tr. 218-19.

Disability determinations are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). However, the ALJ may not disregard physician opinions simply because they are solicited by counsel. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). The ALJ found Dr. Weisensee's October 2007 endorsement "irrevocably tainted" because it was submitted at the request of Snedker's attorney. Tr. 21. This reasoning for rejecting Dr. Weisensee's October 2007 opinion is not sustained. Because the ALJ improperly rejected Dr. Weisensee's clinical opinion regarding the period during which Dr. Weisensee treated Snedker, the ALJ must reconsider Dr. Weisensee's concurrent work-related opinion.

In summary, the ALJ's rejection of Dr. Weisensee's clinical opinion is not based upon the record. The ALJ's rejection of Dr. Weisensee's work-related opinions are furthermore not based upon the proper legal standard. The ALJ's analysis of Dr. Weisensee's opinions is therefore not sustained.

## III. Lay Witness Testimony

### A. Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19

(9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting her testimony. *Nguyen*, 100 F.3d at 1467. However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

### B.  Analysis

The ALJ rejected testimony submitted by Snedker's brother, Dan Speers. The ALJ reasoned that Sneder never testified that her joints "lock up" and that Speers's statement to this effect was therefore not credible. Tr. 20. Snedker in fact stated that her body "locks up." Tr. 92. The ALJ's reasoning flatly contradicts the record. The ALJ offered no other reasons for rejecting Speers's testimony. This analysis is not based upon the record or the legal standards articulated above, and is therefore not sustained.

### REMAND

The ALJ erroneously evaluated Snedker's testimony, Dr. Weisensee's opinion, and the lay witness testimony. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting

such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill*, 12 F.3d at 919); *Nguyen*, 100 F.3d at 1466-67; *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991).

Here, the ALJ erroneously assessed Snedker's testimony regarding the amount of time she spends in bed and failed to make a sufficient overall credibility determination. The ALJ also erroneously evaluated Dr. Weisenee's clinical opinion regarding Snedker's fibromyalgia diagnosis and Dr. Weisensee's work opinions. Finally, the ALJ failed to appropriately evaluate Speers's testimony under the appropriate legal standards.

The vocational expert testified that an individual missing two or more days of work per month would be unable to sustain competitive employment. Tr. 258. However, the erroneously evaluated testimony does not conclusively establish that Snedker would miss two or more work days per month. Notably, Dr. Weisensee's August 31, 2007, and October 3, 2007, statements are internally contradictory regarding how many work days per month Snedker might miss due to her impairments during the period Dr. Weisensee treated Snedker. Tr. 214, 218-219.

In such instances, award of benefits is inappropriate. *Harman*, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly evaluated evidence cited above.

*Id.* If necessary, the ALJ must then revise her RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Snedker's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## **ORDER**

For these reasons, this Court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 7th day of July, 2009.

Ann Aiken
United States District Judge

16 - OPINION AND ORDER